UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

CIVIL ACTION NO. 20-137-DLB

JAMES D. ASHER                                                     APPELLANT

v.                   **MEMORANDUM OPINION AND ORDER**

COOK AND SONS MINING, INC.,
EARNEST COOK & SONS MINING, INC., et al.                    APPELLEES

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Appellant James D. Asher's appeal from the decision of the United States Bankruptcy Court denying Asher's Application for Final Allowance of Compensation and Reimbursement of Accrued Expenses and Contingency Fees. (Docs. # 1 and 1-1). Following a Show Cause Order by this Court, (Doc. # 8), the Appellees, Cook and Sons Mining and Earnest Cook & Sons Mining, Inc., declined to brief this appeal, (Doc. # 9). These Appellees contend that they do not hold a stake in the outcome of this appeal as the funds remaining in escrow are insufficient to pay unsecured creditors like Asher. The remaining Appellees failed to respond to the Appellant's initial brief or the Show Cause Order entered by the Court. Therefore, the appeal is now ripe for the Court's review. For the reasons set forth herein, the decision of the Bankruptcy Court is **affirmed**, and Appellant's appeal is **dismissed**.

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

In 2003, Cook and Sons Mining, Inc. and Earnest Cook & Sons Mining, Inc. (referred to collectively as "Cook & Sons") filed a Chapter 11 Voluntary Petition in the

1

United States Bankruptcy Court for the Eastern District of Kentucky. *In re Cook & Sons Mining, Inc.*, 03-70789 (Bankr. E.D. Ky.), ECF No. 1. Later that year, on application from Cook & Sons, *id.* No. 242, James D. Asher ("Asher") was employed as Special Litigation Counsel, *id.* No. 285. Asher was retained in order to pursue damages related to insurance coverage from Underwriter's at Lloyd's of London ("Lloyds") and CS&W Insurance Services, Inc. ("CS&W"). *Id.* No. 242 at 2. After Debtor asked CS&W to procure an insurance policy for its coal preparation plant and related property, CS&W secured an insurance policy from Lloyd's which was supposed to cover Debtor's raw coal silo. *Id.* No. 1348-2 at 22. In carrying out his representation of Debtor, Asher filed an action styled *Earnest Cook and Sons Mining, Inc. v. Underwriters at Lloyd's, London, and CS&W Insurance Services, Inc.*, 04-CI-265, in Letcher Circuit Court. *Id.* at 1. Ultimately, Asher assisted Debtor in settling the case for the payment of $1,250,000 from Lloyd's, $11,500 from CS&W, and $1,000 from Lexington Insurance Co. *Id.* No. 1294 at 1. From this settlement, Asher received $451,134.77 for attorney's fees and expenses. *Id.* at 2.

In 2008, Cook & Sons filed a Report of Final Distribution, *id.* No. 1309, prompting the Bankruptcy Court to close the case, *id.* No. 1311. Ten years later, in 2018, Cook & Sons filed a Motion to Reopen the Chapter 11 case, *id.* No. 1315, following an audit performed by insurance company American International Group ("AIG"). AIG had issued insurance policies covering worker's compensation, automobile, and general liability insurance to Cook & Sons, *id.* No. 252 at 6-7, and found that it owed Cook & Sons $367,470 in reimbursed premiums. *Id.* No. 1331-1 at 1. AIG would not return the reimbursed premiums without a court order, which led to the reopening of the underlying bankruptcy action. *Id.* No. 1315 at 2.

After the case was reopened, Asher sought to recover forty-percent of the reimbursed premiums, equivalent to $146,988.73, based on the contingency fee agreements[1] he entered into with Cook & Sons. *Id.* No. 1348 at 1. The Disbursing Agent and attorney for Cook & Sons, Matthew Bunch, opined that Asher should be paid according to the previously approved contingency contracts. *Id.* No. 1331 at 5. Unfortunately, in anticipation of his retirement in 2013, Asher destroyed files related to his duties as Special Litigation Counsel before the reimbursed premiums were discovered. *Id.* No. 1348-3 at 4 and (Doc. # 5 at 27-28).

The Debtors in the underlying bankruptcy action utilized a liquidating plan ("the Plan") to assist them in winding up their operations. *Id.* No. 634. As part of the Plan, a Post-Confirmation Committee ("the Committee") was formed, which consisted of members of the unsecured creditors committee. *Id.* The Plan granted the Committee the power to make all decisions for the Debtor and its assets through the Disbursing Agent, who held the assets and assisted in writing checks to distribute funds to creditors. *Id.* However, following the initial closure of the bankruptcy case, the Committee was discharged. *Id.* No. 1313. Although the Disbursing Agent could act under the authority of the Committee, because the Committee no longer exists, the bankruptcy court was required to approve the distribution of the reimbursed premiums. (Doc. # 1-1 at 7). The bankruptcy court attempted to determine the propriety of awarding Asher fees by holding two separate hearings, one on August 20, 2020 and another on September 17, 2020. *In re Cook & Sons Mining, Inc.*, 03-70789 (Bankr. E.D. Ky.), ECF Nos. 1355 and 1360.

---

[1] There are two contingency fee agreements in Asher's Employment Application. One is related to Asher's pursuit of claims against Lloyd's and the other is related to his pursuit of claims against CS&W. *See id.* No. 242.

Ultimately, the bankruptcy court determined that Asher was not entitled to compensation relating to the AIG reimbursed premiums and therefore denied his application for fees. (Doc. # 1-1). Thereafter, Asher filed this appeal. (Doc. # 1).

## II. ANALYSIS

### A. Standard of Review

Due to the nature of the bankruptcy court's decision, different standards of review apply to different portions of the opinion. A bankruptcy court's factual findings are reviewed for clear error. *In re Boland*, 946 F.3d 335, 340 (6th Cir. 2020). A factual finding is considered clearly erroneous if "though there is evidence to support that finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. Mack*, 159 F.3d 208, 215 (6th Cir. 1998)). The Sixth Circuit has noted that "[t]his is a tough standard to meet by design," as the bankruptcy judge "is best positioned to determine what the facts are." *Id.*

To the contrary, a bankruptcy court's legal conclusions are subject to *de novo* review. *In re Batie*, 995 F.2d 85, 88 (6th Cir. 1993). For example, "where a bankruptcy court 'applies' the Bankruptcy Code, its determinations are [] subject to *de novo* review." *In re Conco, Inc.*, 855 F.3d 703, 709 (6th Cir. 2017). However, "[w]here a bankruptcy court merely 'interprets' an ambiguous plan under its equitable authority, the decision is reviewed for an abuse of discretion." *Id.* If a question concerns both law and fact, then it must be "br[oken] down into its constituent parts and apply the appropriate standard of review for each part." *In re Batie*, 995 F.2d at 88. A court's "determination of whether the bankruptcy court initially approved [an attorney's] fees under § 328 is a question of law,

4

which is subject to de novo review." *In re Fashion Shop of Ky., Inc.*, 350 F. App'x 24, 26 (6th Cir. 2009) (internal citation omitted).

**B.     Bankruptcy Court's Decision**

Upon review of Asher's application for an allowance of compensation, the bankruptcy court decided that: (1) Asher was not hired or approved to pursue reimbursed premiums from AIG and (2) Asher was not entitled to fees under either 11 U.S.C. §§ 328 or 330.  (Doc. # 1-1 at 8 and 15).

First, the bankruptcy court reviewed Asher's employment application and engagement papers and determined that Asher was only employed to pursue claims against Lloyd's and CS&W.  (*Id.* at 8-9).  As part of this analysis, the bankruptcy court determined that Asher was retained under 11 U.S.C. § 327(e), which requires Court approval if the lawyer's work extends beyond the purposes described in the employment application.  (*Id.* at 9-10).  Because Asher did not receive approval to pursue claims from AIG, as evidenced by the absence of language mentioning AIG proceeds in the engagement papers, the bankruptcy court found that Asher could only collect a contingency fee for insurance proceeds from the Lloyd's policy.  (*Id.* at 14).

Second, the bankruptcy court held that Asher was not entitled to fees from the AIG reimbursed premiums under either 11 U.S.C. §§ 328 or 330.  (*Id.* at 15).  Specifically, the court determined that although Asher's contingency fee agreements were pre-approved under § 328, because the agreements did not mention the AIG reimbursed premiums, that portion of his potential fee award would still require approval by the court.  (*Id.* at 16). In this review, the court utilized § 330's lodestar method, to determine if Asher's fee was reasonable.  (*Id.* at 17-18).  The Court found that because there is a lack of evidence that

5

Asher is the one who recovered the AIG reimbursed premiums, he could not show that he was owed fees incurred for services actually rendered. (*Id.* at 18). Further, the court determined that even if he could show he rendered these services, the fee would be unreasonable under § 330. (*Id.* at 20). Although Asher did not submit time records, to be entitled to the almost $150,000 he requests, Asher would have to show 857 hours of work at his previously-approved rate of $175.00 per hour. (*Id.*). Even if Asher could show that his fee was pre-approved under § 328, as it relates to the AIG reimbursed premiums, the bankruptcy court found that the extraordinary and unusual circumstances surrounding his claim justifies a departure from the pre-approved compensation. (*Id.* at 21). Ultimately, the bankruptcy court denied Asher's application for a final allowance of compensation based on the recovery of the reimbursed premiums. (*Id.*).

### C. Asher's Employment Application and Engagement Papers

The bankruptcy did not clearly err in determining, as a factual matter, that Asher's employment application and engagement papers only authorized Asher to pursue claims against Lloyd's and CS&W.[2] *See In re Boland*, 946 F.3d at 340. The record evidences an intention to employ Asher under § 327(e) and lists claims against Lloyd's and CS&W as the specific purposes which Asher was employed for. These facts illustrate that the AIG reimbursed premiums were outside the scope of Asher's representation.

The motion requesting Asher's appointment as special litigation counsel contains the at issue employment application and contingency fee agreements. *In re Cook & Sons Mining, Inc.*, 03-70789 (Bankr. E.D. Ky.), ECF No. 242. Paragraph three of the motion

---

[2] In his brief, Asher recognizes that the clear error standard applies to these specific findings of the bankruptcy court. (Doc. # 5 at 13).

itself asks the bankruptcy court to allow Cook & Sons to employ Asher under § 327(e)[3]

for the following "special and specific purposes" [:]

> [l]egal services rendered in the prosecution and collection of claims and/or causes of action against only the following entities with compensation to be paid to Asher on a contingency fee basis according to the terms and conditions set forth in the attached agreements, subject to Court approval thereto, regarding the filing of: (i) Underwriters Lloyd's at London regarding the collapse of the Debtors' silo and the damages resulting therefrom; and (ii) C S & W Insurance Services, Inc., National Casualty Company, Casualty & Surety, Inc.[,] American Safety Risk Retention Group, Inc., James Godfrey or any other related party thereto regarding water damage claim.

*Id.* at 2.

Section 327(e) provides for the trustee to "employ, for a specified special purpose . . . an attorney that has represented the debtor." To qualify for employment under § 327(e), the attorney must have previously represented the debtor. *In re Licking River Mining, LLC*, No. 14-10201, 2015 WL 5601284, at *8 n.6 (E.D. Ky. Sept. 22, 2015). In Asher's declaration, included in the 2003 motion to employ him as special counsel, he explains that for the year prior to the bankruptcy he performed all required legal services for Cook & Sons. *In re Cook & Sons Mining, Inc.*, 03-70789 (Bankr. E.D. Ky.), ECF No. 242 at 19.

Unfortunately for Asher, the motion directly states that Cook & Sons "desire to employ Asher as Special Counsel under Code Section 327(e)[,]" which limited the scope of representation to that provided in the employment contract. *In re Cook & Sons Mining, Inc.*, 03-70789 (Bankr. E.D. Ky.), ECF No. 242 at 1. Contrary to Asher's contention that the bankruptcy court did not mention § 327(e) in its order, (Doc. # 5 at 36), the order

---

[3] As discussed in further detail below, Asher contends that the bankruptcy court's finding that Asher was retained under § 327(e) is unsupported by the order allowing for Asher's appointment. (Doc. # 5 at 36). However, Cook & Sons' Motion specifically asks for Asher to be retained under this code section.

7

likewise allows for Asher's appointment "pursuant to 11 U.S.C. Sections 327 and 330." *Id.* No. 285 at 1. Regardless of whether the bankruptcy court failed to mention a specific provision of § 327, it is clear from the filings that Asher was retained under § 327(e).

The motion also specifically states the services Asher is to render to Cook & Sons, which includes "perform[ing] all other legal services for the Debtors herein as may be necessary regarding all litigation described in paragraph no. 3 above." *Id.* at 3. Attached to this motion are two contracts—one governing Asher's work for Cook & Sons' claim against Lloyd's at London and the other governing Asher's work related to the claim against CS&W and others related to the water damage claim. *Id.* at 5, 12. These contracts are largely identical except for Section 1 titled "Statement and Subject of Employment," which explicitly states that Asher will represent Cook & Sons against Lloyd's "regarding the collapse of a silo and damages resulting therefrom and pursuit of, all applicable insurance proceeds, if any, and any and all other cause of action that Attorney deems necessary," *id.* at 5, and against CS&W "regarding water damage claim(s) and damages resulting therefrom, and pursuit of, all applicable insurance proceeds, if any, and any and all other causes of action that Attorney deems necessary," *id.* at 12. As discussed above, in evaluating these contracts, the bankruptcy court determined that Asher's employment only included the pursuit of claims against Lloyd's and CS&W. (Doc. # 1-1 at 8-9). To the contrary, Asher argues that the bankruptcy court's decision renders the language "any and all other causes of action that Attorney deems necessary" useless in contradiction with Kentucky law. (Doc. # 5 at 38).

8

Counsel appointed under § 327(e) is limited to pursuing claims related to this "specified special purpose and not for the general management of the debtor's bankruptcy." *In re West Pointe Props., L.P.*, 249 B.R. 273, 284 (Bankr. E.D. Tenn. 2000); *see also In re Nat'l Staffing Servs.*, No. 3:06-cv-2675, 2007 WL 2079881, at *2 (N.D. Ohio July 13, 2007) (holding that attorney was employed for specific purpose of prosecuting a personal injury claim). The designation between a trustee's general management of a debtor's bankruptcy, codified in § 327(a), and special purpose counsel is described as follows: "[t]he trustee remains as the catch-all, covering matters for which [special counsel] *was not specifically designated counsel*, and umbrella, supervising, coordinating, and strategizing regarding the course of the bankruptcy; [special counsel] simply does the leg-work on *certain specified, albeit important, matters*." *In re Devlieg, Inc.*, 174 B.R. 497, 505 (Bankr. N.D. Ill. 1994) (emphasis added).

Therefore, even though the contracts include language allowing for Asher to pursue any and all other causes of action that he deems necessary, this grant of authority is outside the scope of § 327(e) representation, which again is limited to the specific purposes outlined in the engagement papers. *In re Licking River Mining*, 2015 WL 5601284, at *10 ("an attorney retained as special counsel may receive compensation only for those services directly related to the limited scope of retention."); *see also In re Roper & Twardowsky, LLC*, 566 B.R. 734, 752 (Bankr. D. N.J. 2017) (denying an application to appoint special counsel under § 327(e) because the scope of the proposed employment was "far too expansive" to be considered appropriate under § 327(e)).

Because the record evidences an intention to employ Asher under § 327(e) and lists claims against Lloyd's and CS&W as the specific purposes which Asher was

employed for, the bankruptcy court did not commit clear error by determining that Asher was only employed to pursue claims against Lloyd's and CS&W.

D. **Asher's Entitlement to Fees**

Because Asher's employment application and engagement papers did not authorize him to pursue claims against parties other than Lloyd's and CS&W, he must show that he is entitled to fees under some other bankruptcy code provision. In his brief, Asher contends that because his fees were pre-approved under § 328, they are not subject to a reasonableness analysis under § 330. (Doc. # 5 at 33-34).[4] Asher's reasoning is clearly flawed. Because the bankruptcy court did not err in determining that Asher was employed for the specific and special purpose of pursuing claims against Lloyd's and CS&W, his fees were only pre-approved as to his pursuit of those claims. The claim related to the AIG reimbursed premium was not pre-approved, and thus, Asher must show he can recover fees under § 330. The bankruptcy court determined that Asher was unable to meet the reasonableness standard set out by § 330 and consequently could not recover fees related to the AIG reimbursed premiums. (Doc. # 1-1 at 20-21).

A bankruptcy court's application of the bankruptcy code, such as the application of § 330's reasonableness analysis, is reviewed *de novo*. *In re Conco, Inc.*, 855 F.3d 703, 709 (6th Cir. 2017). "Absent pre-approval under § 328, the court may award 'reasonable compensation' under § 330 for 'actual, necessary services' rendered by professionals employed pursuant to § 327 'based on the nature, the extent, and the value of such

---

[4] Asher also makes much of the fact that the disbursing agent, Thomas Bunch, agrees that Asher is entitled to 40% of the AIG funds. (Doc. # 5 at 41). Unfortunately for Asher, "[e]ven where no objections have been raised to an application for compensation, the court is still charged with conducting an independent examination of that application." *In re Kieffer*, 306 B.R. 197, 206 (Bankr. N.D. Ohio 2004). That independent examination reveals that Asher is not entitled to any of the AIG funds.

services.'" *In re Fashion Shop*, 350 F. App'x at 27 (quoting 11 U.S.C. § 330(a)). To determine the reasonableness of compensation under § 330, the Sixth Circuit utilizes the lodestar method of fee calculation. *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991). The "lodestar" amount is calculated by "multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended." *Id.* (quoting *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 879 (11th Cir. 1991)). The court may also look to the following relevant factors: time spent, rates charged, whether the services were necessary or beneficial to the administration of the case, whether the services were performed within a reasonable amount of time, and whether the compensation is reasonable based on the customary compensation charged by other similarly situated professionals. *In re Kieffer*, 306 B.R. 197, 204 (Bankr. N.D. Ohio 2004) (citing 11 U.S.C. § 330(a)(3)). "The burden of proof as to entitlement to and reasonableness of a fee request is upon the moving party." *Id.* at 206.

The bankruptcy court determined that the $146.988.73 fee claimed by Asher related to the reimbursed premiums was unreasonable. (Doc. # 1-1 at 20). In utilizing the lodestar calculation, the court determined based on Asher's fee, $175 per hour, he would have to show approximately 857 hours of work to justify his entitlement to $146,988.73.[5] (*Id.*). The bankruptcy court found that because Asher could not submit time records, and instead relied on his own affidavit to prove his entitlement to the reimbursed premiums, his claim to the fee was unreasonable. (*Id.*). Without citation to the record, Asher argues that he "amended the Debtors' complaint to recover

---

[5] The bankruptcy court rounded up Asher's requested fee amount to $150,000 in performing the lodestar calculation. (Doc. # 1-1 at 20). For the sake of specificity, this Court's lodestar calculation results in Asher having to perform almost 840 hours of work to be entitled to the request of $146,988.73.

11

unreimbursed premiums, took discovery to find out who might be liable for them, found out what protocols must be observed in so doing, and then sent letters to the agent in keeping therewith." (Doc. # 5 at 40). It seems that Asher's support for this sentence comes from his affidavit, which lays out the work he allegedly performed in recovering the AIG reimbursed premiums. The affidavit states that Asher pursued reimbursement of unearned premiums by sending a letter to the agent, CS&W, requesting the refund of all unearned premiums. *In re Cook & Sons Mining, Inc.*, 03-70789 (Bankr. E.D. Ky.), ECF No. 1348-2 at ¶ 12. Asher opines that his notifying CS&W led to CS&W forwarding this letter to AIG, which prompted the audit and the recovery of the reimbursed premiums. (Doc. # 5 at 30, 35). Asher is unable to produce the letter sent to CS&W. (*Id.* at 28). On this point, the bankruptcy court found that Asher's letter to CS&W during the underlying Letcher Circuit Court litigation was not likely to have brought about the audit that resulted in the reimbursed premiums, when those premiums were tied insurance coverage that was not the subject of the Letcher Circuit Court litigation.[6] (Doc. # 1-1 at 19). Instead, the bankruptcy court determined that the premiums were likely recovered because they were based on estimates and therefore the contract term had a policy of auditing the estimates to ensure the correct amount was paid. (*Id.* at 19-20).

Even assuming that Asher's letter resulted in the discovery of the reimbursed premiums, it is clear that the resulting fee would not be reasonable. A single letter to CS&W vaguely referencing unearned premiums could not have been the result of over 800 hours of legal work. The remaining factors— time spent, rates charged, whether the

---

6     Notably, the bankruptcy court also explained that CS&W was not even employed as AIG's insurance broker during the final period of coverage related to reimbursed premiums. (Doc. # 1-1 at 19).

services were necessary or beneficial to the administration of the case, whether the services were performed within a reasonable amount of time, and whether the compensation is reasonable based on the customary compensation charged by other similarly situated professionals—are all unknown to the Court as Asher has not provided time sheets or the letter allegedly sent to CS&W. *In re Kieffer*, 306 B.R. 197, 204 (Bankr. N.D. Ohio 2004) (quoting 11 U.S.C. § 330(a)(3)). Further, Asher's brief does not even argue that his request is reasonable, because it relies entirely on the Court finding that the underlying contracts encompassed more than just Cook & Sons claims against Lloyd's and CS&W. While it's unfortunate that Asher's impending retirement caused him to destroy confidential client documents, he bears the ultimate burden of showing the Court that the fee requested is reasonable. *Id.* at 206. He is unable to do so.

Furthermore, even if the amount claimed by Asher was reasonable, the compensation may only be awarded for services that were actually performed or necessary. 11 U.S.C. § 330(a)(1)(A). Again, unfortunately for Asher, because of the destruction of confidential documents, he cannot prove this entitlement. Aside from his own affidavit, Asher presents no proof that he performed services that ultimately recovered reimbursed premiums from AIG. Notably, Asher cannot provide time entries, let alone descriptions of the services rendered. This alone would call for a notable reduction in any award of fees. *See In re Fullen*, 87 B.R. 504, 507-09 (Bankr. S.D. Ohio 1988) (holding that attorney's lack of proof relating to whether services were actually provided reduced the amount of fees earned, even where attorneys provided non-descriptive time entries); *In re Bean*, No. 04-34850, 2007 WL 81795, at *10 (Bankr. E.D. Tenn. Jan. 8, 2007) (court reduced attorney's fee award where time entries were lumped

together which prevented the court from assessing their reasonableness). Asher's lack of proof of entitlement would be fatal to his claim, even if the award were reasonable, as he bears the burden of proving that the services were actually provided and necessary to Cook & Sons. Therefore, as Asher has not shown he is entitled to fees under § 330, the bankruptcy court was correct in denying Asher's application for compensation.

## III. CONCLUSION

Thus, for the reasons set forth herein,

**IT IS HEREBY ORDERED** that the bankruptcy court's denial of Asher's Application for Final Allowance of Compensation and Reimbursement of Accrued Expenses and Contingency Fees is **AFFIRMED**.

This 30th day of June, 2021.

Signed By:
*David L. Bunning* DB
United States District Judge

M:\DATA\ORDERS\PikeCivil\2020\20-137 MOO.docx

14